## DAUGHERTY v WILSON & SON

Ohio Appeals, 2nd Dist, Franklin Co

No 2303.   Decided June 23, 1933

J. E. Todd, Columbus, and James M. Linton, Columbus, for plaintiff in error.

Troy T. Junk, Washington C. H., and Pretzman, Dillon & Craig, Columbus, for defendant in error.

BY THE COURT

Motion for new trial having been filed and overruled, error is prosecuted to this court.

Counsel not only in the oral arguments, but in their briefs have submitted several very interesting questions and have sup-

ported their respective contentions with, what we are pleased to term, unusually helpful briefs.

We have considered the record and these briefs with care, but shall not attempt to quote in detail from the record nor to discuss the many pertinent authorities which have been cited by counsel. We shall content ourselves with announcing the conclusion at which we have arrived after a consideration of the record and the briefs of counsel.

In brief, the note sued upon is a cognovit note, payable on demand, dated Washington Court House, Ohio, December 31, 1928. Plaintiff claims to have become the owner of this note on the 12th day of March 1929. Interest was paid on the note May 15, 1929, September 30, 1929 and December 30, 1929, and on June 5, 1929, $2000 was paid on the principal. These payments were made at and to the Bank. The plaintiff, in brief, claims that on March 12, 1929 his brother, Mal S. Daugherty, President of the Ohio State Bank, accompanied by Mr. Clyburn, an Attorney of Washington Court House, went to the office of the plaintiff in the Yuster Building in Columbus. That plaintiff at that time was in Florida. That the Secretary of plaintiff, Miss Carroll, talked to the plaintiff by telephone. The record shows that Miss Carroll talked over the main 'phone and Mal S. Daugherty, the President of the Ohio State Bank, and the brother of plaintiff, listened in on an extension 'phone in the office and participated somewhat in the conversation. As the result of this telephone conversation, plaintiff claims it was arranged that Miss Carroll should turn over to Mr. Clyburn and Mal S. Daugherty $50,000 and that Mr. Clyburn and Mal S. Daugherty should return to Washington Court House and select out of the bank's notes good notes aggregating the sum of $50,000; that no particular notes were referred to in this conversation but that the notes turned over by the bank in return for this $50,000 should be good notes; that Miss Carroll turned over to Mr. Clyburn and Mal S. Daugherty two checks, one for $30,000 and one for $20,000 and Mr. Clyburn and Mal S. Daugherty returned to Washington Court House and selected from the bank's notes certain notes aggregating principal and interest a little over $50,100; that the checks of plaintiff were deposited by Mal S. Daugherty in the bank to his account and his check was drawn in favor of the bank for the full value of the notes selected including principal and interest to that date; that the notes so selected were

turned over to Mr. Clyburn as the agent and attorney of the plaintiff who was to hold the notes until called for by plaintiff; that Mr. Clyburn kept the notes in his safety deposit box at the bank; that all these notes were payable at the said bank; that from time to time payments were made either as principal or interest on these notes at the bank and the bank then notified Mr. Clyburn and he produced the notes and had the payments credited thereon and then returned the same to his safety deposit box.

The defendant did not know of this procedure. The defendant in making payments of interest and principal thought it was dealing with the bank.

The note in question was one of the notes that was included in the arrangement which was perfected by Mr. Clyburn, Mal S. Daugherty, Miss Carroll and the plaintiff during the telephone conversation above referred to.

The record shows that the defendant did not know until after the bank closed that the plaintiff claimed to be the owner of the notes in question. The defendant upon the payment of part of the principal of the note and the installments of interest made after the date the plaintiff claims to have acquired the note in question were made by the defendant at the bank and they say they thought the bank was still the owner and holder of the note in question.

The petition in error contains 14 grounds of error.

Counsel for plaintiff in error, in their brief, have stressed but three of these different grounds of error. They concede that the other errors naturally group themselves around the three grounds of error urged in their brief.

The first ground of error urged by counsel for plaintiff in error is that there was error in suspending or vacating the judgment entered by virtue of the warrant of attorney and permitting the answer tendered by defendant to be filed.

Counsel for defendant in error in their brief suggest that the action of the trial court in suspending the judgment in question and permitting an answer to be filed is not properly before this court for review for the reason that no exception was taken by plaintiff in error to the suspending of such judgment and permitting the defendant below to file the answer which was proffered.

We have examined the journal entry of date September 13, 1930 wherein the motion of defendant to vacate or suspend the original judgment was submitted to and sustained by the court and in which entry the court found that the answer tendered by the defendant stated a good defense to the petition and in which entry the judgment previously rendered was sustained and the defendant ordered to file its answer forthwith and new trial of the issues granted.

This entry is approved by the trial court. It is also approved by some of counsel for both the plaintiff below and the defendant below. It contains no exception to the rulings of the trial court.

The rule is well established in Ohio and requires no citation of authorities to support the proposition that a reviewing court upon a proceeding in error, will review only such alleged errors in the lower court as were preserved by exception.

The journal entry of January 25, 1933, overruling the motion for new trial upon the final hearing and rendering judgment for plaintiff in error in the sum of $527.81, as per the verdict of the jury does contain an exception to the former finding of the court that the answer tendered interposed a valid defense and also to the order of the court vacating the former judgment in favor of plaintiff in error.

We will assume for the purpose of the case that the question which counsel for plaintiff in error have urged with such force is properly before this court for review.

As above stated, counsel for plaintiff in error seriously insist that the trial court was without authority to suspend or vacate the judgment in question as no valid defense was proffered. Reliance is placed upon §§11636 and 11637, GC. §11637 GC provides that a judgment shall not be vacated on motion or petition until it is adjudged that there is a valid defense to the action in which the judgment was rendered.

In brief, plaintiff in error insists that the answer which was proffered did not contain a defense to the note sued upon; that the answer merely set forth facts which would constitute a set off as against the claim of plaintiff. It is contended that the trial court was without authority to suspend the judgment obtained upon the cognovit note in the absence of an answer showing a defense to the note and that a set off does not constitute a defense.

Counsel for plaintiff in error in support of this proposition cite and largely rely upon the case of **Bulkley v Greene, 98 Oh St 55.**

The third paragraph of the syllabus is as follows:

"3. A counterclaim cannot be made available under §11635, GC, as a basis to vacate a judgment by confession. Such is not a defense to the action within the purview of that section."

The case of Bulkley v Greene was based upon a petition to vacate a judgment which was rendered at a previous term.

It will be noted that the judgment in question was vacated by the trial court during the same term in which it was rendered.

The answer also raised the issue as to the good faith of plaintiff in error in purchasing the note and also the issue that the note was bought an unreasonable length of time after its issue. The ownership of the note by plaintiff in error would also fall within the general denial contained in the answer.

Without entering into an extended discussion of the sections of the Code and the authorities cited, we are of opinion that the case at bar is controlled by the rule announced in the case of the **First National Bank of Dunkirk v Smith, 102 Oh St, 120.** In that case a judgment was rendered on a cognovit note in favor of the plaintiff and during the same term of court a motion was filed by the defendant to vacate the judgment. The court suspended the judgment and granted leave to the defendant to file an answer. The syllabus in this case is as follows:

"(1) A court of general jurisdiction, such as a Common Pleas Court, has control of its own orders and judgments during the term at which they are rendered, which control may be exercised, within the sphere of sound discretion, as an inherent right founded upon the common law.

"(2) The procedure announced in Chapter 6, Division 4, Title 4, part Third of the General Code, entitled, 'Relief after Judgment' relates to the vacation and modification of judgments by the court after the term at which they were made, and does not limit a court of general jurisdiction in the exercise of its control over its judgments during the term."

We cannot escape the conclusion that the trial court retained jurisdiction over this judgment during the term and that there was no abuse of discretion on the part of the trial court in suspending this judgment and allowing an answer to be filed.

The plaintiff in error for a second ground of reversal claims that he is the holder of the note in question in due course and is therefore entitled to recover the full amount of the note sued upon.

**Sec 8157, GC,** defines a holder in due course as follows:

"One is a holder in due course who has taken the instrument under the following conditions: (1) that it is complete and regular upon its face, (2) that he became the holder of it before it was overdue and without notice that it previously had been dishonored if such was the fact, (3) that he took it in good faith and for value, (4) that at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

One of the issues raised by the pleadings is, "Was this note which was dated December 31, 1928 and negotiated March 12, 1929, negotiated an unreasonable length of time after its issue?" If it was negotiated an unreasonable length of time after its issue then the plaintiff in error is not a holder in due course.

The answer and reply thereto also raise the issue as to whether the plaintiff in error is a holder in good faith. The above are questions of fact which were submitted to the jury for its consideration.

Was the note in question negotiated an unreasonable length of time after its issue?

**Sec 8158, GC,** provides that:

"When an instrument payable on demand is negotiated an unreasonable length of time after its issue, the holder is not deemed a holder in due course."

**Sec 8297, GC,** provides that:

"In determining what is a 'reasonable time' or an 'unreasonable time' regard is to be had to the nature of the instrument, the usage of trade or business (if any) with respect to such instrument, and the facts of the particular case."

It will be noted that under this section of the Code the facts of the particular case enter into the determination of whether the instrument was or was not negotiated an unreasonable length of time after its issue.

The trial court in its general charge to the jury as found on pages 157, 158, 159 and 160 submitted these questions to the jury and we think fairly presented these issues for the determination of the jury.

Two questions of fact were therefore sub-

mitted to the jury for its consideration, namely, was the note in question negotiated an unreasonable length of time after its issue? Was the plaintiff in error a holder in due course as that term is defined by the Code and by the authorities?

These are questions of fact. Whether the jury found in favor of the defendant in error upon both of these issues of fact or upon but one of such issues of fact and, if so, upon which one, we are unable to determine from the record. The verdict is a general one and no special interrogatories were requested or submitted. We have under this state of the record, the two issue question and if either of such issues can be supported by the evidence and no prejudicial error intervenes as to such issue, then the verdict must be upheld although there might be prejudicial error as to the other of such issues.

To restate the evidence and the circumstances surrounding this transaction with any effect would require a repetition of a large portion of the testimony. This is impracticable. It is not a question as to what conclusion we might reach upon either or both of these issues of fact from a reading of the testimony, but it is a question as to whether the evidence and circumstances disclosed by the record warranted the jury in arriving at the conclusion which it did. The jury is the trier of the facts and it is peculiarly within the province of the jury to determine the weight to be given the testimony of the different witnesses and the credibility which should be attached to such testimony. These are matters peculiarly within the province of the jury, and upon a careful review of all the testimony, we have arrived at the conclusion that a reviewing court would not be justified in holding that the record did not disclose such facts and circumstances as would warrant the verdict which was returned. If either or both of these defenses is sustained then it would follow that the defendant was entitled to an offset.

We have considered the charge of the court, including the special charges requested by counsel for plaintiff in error and also for defendant in error; also the special charges rejected by the trial court and all of the other grounds of error urged by counsel for plaintiff in error in their brief. Upon such consideration, we are of opinion that the record does not contain any error prejudicial to plaintiff in error and the judgment of the lower court must, therefore, be affirmed.