SMITH *v.* FULTON, SUPT. OF BANKS, ET AL.

(Decided April 12, 1935.)

*Mr. Joseph L. Wetli,* for plaintiff.

*Messrs. Boggs & Chase,* for defendant Superintendent of Banks.

*Messrs. Holbrook & Banker,* for defendant The Metropolitan Life Insurance Company.

Ross, P. J.  This matter is presented to this court

on appeal from a judgment of the Common Pleas Pleas Court of Lucas county.

In the petition the plaintiff, Mrs. Anna Smith, alleges that on March 1, 1929, she and her husband, since deceased, executed a note and mortgage to The Ohio Savings Bank & Trust Company, due and payable February 28, 1931; that on July 30, 1931, the note and mortgage were indorsed, assigned, and transferred to The Metropolitan Life Insurance Company without notice to the plaintiff; that on August 15, 1931, the bank was "turned over" to the defendant Superintendent of Banks of Ohio; that thereafter she received notice of the transfer of the note and mortgage to the insurance company; that at the time of such transfer she had on deposit in the bank a much larger sum than the balance of the loan then due, and that a deposit of $200 was made in the bank on July 28, 1931, with instructions to credit such amount upon the loan, but that the same was not done.

The plaintiff prays that an equitable set-off may be decreed against the amount of her loan.

The insurance company answered admitting the execution and transfer of the note and mortgage, and alleges that the transfer of the mortgage was recorded. As a second defense, the insurance company alleges that the plaintiff executed an affidavit and presented the same to the Superintendent of Banks, in which it was stated that the plaintiff owned the account in question, and that there were no offsets or any other equitable defenses to her claim for such account; that the plaintiff received dividends on such account, and that she has thereby waived her right to assert an equitable defense against the insurance company.

For cross-petition the insurance company alleged that it paid $1,610.50 for the transfer of the note and mortgage, the balance due from the plaintiff to the bank; that thereafter such bank had no further inter-

est therein; that any sums paid to the bank upon said note and mortgage were held by it as trustee for the insurance company, and that if an offset be allowed in favor of plaintiff then the Superintendent of Banks holds an equivalent amount in trust for the insurance company, transferee of the note and mortgage. Appropriate alternative relief is asked.

The Superintendent of Banks filed an amended answer in which he alleged that the note and mortgage were indorsed, assigned, and transferred by the bank to the insurance company after maturity and without recourse, that all funds received by the bank or the superintendent as payments upon such note and mortgage were paid to the insurance company, and that neither the bank nor the Superintendent of Banks now owes the insurance company anything upon said note and mortgage.

It appears from the evidence before us that the plaintiff and her husband, since deceased, on February 28, 1929, executed a note and mortgage to the bank, as alleged; that after maturity, February 28, 1931, the note and mortgage securing it were indorsed, transferred and assigned to the insurance company on July 30, 1931, for a valuable consideration and without recourse; that no notice of such indorsement, assignment, or transfer was given the plaintiff until long after such assignment was made; that at the time of the transfer of the note and mortgage, July 30, 1931, the plaintiff had on deposit in the bank a much larger sum than the balance then due upon the note; that on June 17, 1931, the bank by resolution put into effect a sixty-day notice rule, expiring upon the 17th day of August, 1931, upon which date it closed its doors and was taken over by the Superintendent of Banks, and that deposits were made by the plaintiff in the bank on June 18, June 29, and August 3.

The plaintiff states in her evidence:

"Q. Mrs. Smith, your account in the Ohio Savings Bank & Trust Company was a savings account? A. Yes.

"Q. Did you make any deposits in your savings account after June 18th, 1931, and prior to August 15th, 1931? A. Yes, I think I paid another payment, two hundred dollars.

"Q. By that you mean deposited something in your savings account? A. Yes. I took the two hundred dollars down from our home and he told me that he could not take it, he would take it off when the payment was due, he told me to put that in the bank. he would take it off when the payment was due.

"Q. Isn't it a fact, Mrs. Smith, that you deposited two hundred dollars on June 29th, 1931? A. Yes, I think I deposited that, too.

"Q. Yes, and isn't it a fact that you deposited one hundred and fifty dollars in your savings account on August third, 1931? A. Yes.

"Q. After June 18th, 1931, did you give the Ohio Savings Bank any notice or request to withdraw your money from your savings account? A. No; I went down to Mr. Brady and told him I wanted to draw the money and he told me while the banks was closed to pay for the home and my other bills had to be paid, because I was sick and could not pay them before, and he told me to, when I went down, I told him I wanted it because I was afraid of the banks closing all together and he told me, 'No, I must, I could rest content, that the banks was all right and * * * I had need not have no worry, just go on with my payments as I was going on with them. * * *

"Q. After the closing of the bank, Mrs. Smith, how many payments did you make on this mortgage? A. I think four.

"Q. Four payments? A. Yes.

"Q. To whom did you make those payments? A. The Midland.

"Q. The Midland Mortgage Company? A. Yes, sir.

"Q. Do you know that the Midland Mortgage Company is the correspondent of the Metropolitan Life Insurance Company? A. I didn't—I could not quite understand that.

"Q. Do you know that the Midland Mortgage Company is the representative and agent of the Metropolitan Life Insurance Company? A. I do now.

"Q. And did you at the time you—? A. No."

The plaintiff asserted a claim based upon her account and received dividends thereon from the Superintendent of Banks.

Under such facts is the plaintiff entitled to a set-off of an amount equivalent to the balance due on the note at the time of transfer, after maturity and without notice to her? If so, shall the note and mortgage be ordered cancelled?

These are the first questions to be answered. The courts outside of this state have had some difficulty in reaching uniform conclusions upon similar issues. They are about equally divided for and against the allowance of the set-off. Brannan's Negotiable Instruments Law (5th Ed., Beutel), 627, *et seq.,* Section 58; Note, 70 A. L. R., p. 248.

As to the right of set-off in the case of claims exclusive of those based upon negotiable instruments, there can be no question that the right of set-off exists in law as well as in equity, where the transferor is insolvent at time of transfer. Restatement of Law of Contracts, 211, Section 167; 24 Ruling Case Law, 823, Set-Off and Counterclaim, Section 30. The right is now recognized by statute in Ohio, Sections 11315, 11317, 11319, 11320, 11321, General Code.

Section 11321, General Code, is as follows:

"When cross-demands have existed between per-

sons under such circumstances that if one had brought an action against the other a counterclaim or set-off could have been set up, neither can be deprived of the benefit thereof by assignment by the other, or by his death. The two demands must be deemed compensated so far as they equal each other."

It is contended that the Negotiable Instruments Law deprives the plaintiff of her right of set-off, in that a holder not in due course is only subject to "defenses" possessed by the maker against the payee. Section 8163, General Code, is as follows:

"In the hands of any holder other than a holder in due course, a negotiable instrument is subject to the same defenses as if it were non-negotiable. But a holder who derives his title through a holder in due course, and who is not himself a party to any fraud or illegality affecting the instrument, has all the rights of such former holder in respect of all parties prior to the latter."

It may be said that it seems reasonable that to the extent a set-off *meets* the claim it is a defense, and certainly this is true in a broader sense. The insurance company obviously is not a holder in due course, having accepted the note after maturity. The fact that under Section 8152, General Code, it is still negotiable is beside the point. The indorsement "without recourse" is a qualified indorsement, but not a restrictive indorsement. Brannan, *supra,* p. 442, and Section 8143, General Code. The note retained its character of negotiability.

The proposition then resolves itself into a question of whether the Ohio courts have limited the word "defenses", so as to exclude set-off, in cases involving negotiable instruments. We are unable to find any authoritative pronouncement binding upon us to this effect. Reference to the decisions of the Supreme Court prior to the passage of the Negotiable Instru-

ments Act shows that the courts definitely permitted the set-off, and these decisions are not inconsistent with the Negotiable Instruments Law as now in force.

"The holder of a promissory note who took it after maturity holds it subject to every objection, including equitable set-off, to which it was subject in the hands of his assignor." *Baker* v. *Kinsey*, 41 Ohio St., 403.

"In a suit by an indorsee of a past-due promissory note against the maker, the latter may, under the provisions of section 5077, Revised Statutes, claim the note compensated by an indebtedness due him from an indorsee, intermediate between the plaintiff and the payee, to the extent that one claim equals the other, where such indebtedness existed during the period the note was held by such indorsee, and the note and the indebtedness were then past due. In such case the right is not limited by section 3173, Revised Statutes." *Wyman* v. *Robbins*, 51 Ohio St., 98, 37 N. E., 264.

In *Follett. Admr.*, v. *Buyer*, 4 Ohio St., 586, a section of the statutes then in force was construed. In effect it is little different from Section 8163, General Code, as applied to the facts herein involved. The section construed is as follows:

"That if any such bond, note, or bill of exchange, shall be indorsed after the day on which it is made payable, and the indorsee shall institute an action thereon against the maker, drawer or obligor, the defendant shall be allowed to set up the same *defense* that he might have done, had the same action been instituted in the name, and for the use, of the person to whom the said bond, note or bill, was originally made payable."

On page 591, the court said:

"When an over-due or non-negotiable note is assigned, the assignee takes it subject to all the equities existing between the payee and the maker; and hence

it is competent for the latter, notwithstanding the assignment, to show that it was obtained by fraud, or without consideration, or that, before he received notice of the assignment, it had been paid or otherwise discharged. So, too, he may *set off* any liquidated demand which he held against the payee, when he first obtained information of the assignment, but not claims subsequently acquired, even though they had their origin in previous transactions." (Italics ours.)

The present statute continues the negotiable character of a past due note, but this does not change the effect of this decision. In accord with these conclusions are *Daugherty* v. *Wilson & Son,* 14 Ohio Law Abs., 655; *Mass. Bonding & Life Ins. Co.* v. *Fish,* 18 C. C. (N. S.), 534, 33 C. D., 190.

The fact that the bank had exercised its right to delay payment of the deposits for sixty days covering the period of transfer is not effective to prevent the rights of set-off. The insurance company knew at the time it took the note after maturity that it was subject to any defense of the maker against the payee bank. It knew that had the bank sought to collect upon the note the account of the maker in the bank could be off-set against her note to the bank. To permit the insurance company now, as holder, to assert its claim on the note, independent of such set-off, is to allow the bank to perpetrate what almost amounts to a fraud, and permits the insurance company indirectly, at least, to be a party to such fraud upon the maker. There is other evidence in this case which emphasizes this view of the matter.

The plaintiff having received dividends upon her entire account with the bank, from its liquidation, holds so much of such dividends as is proportioned to the amount of the set-off or balance due upon the note at the time of transfer and assignment of the same in trust for the insurance company, which was real owner of that much of her account. The insurance company,

while not entitled to any preference, is entitled to its proportion of dividends, already paid, and to its pro rata share of those to be paid, which latter may be paid directly to the company by the liquidators.

It is our conclusion, therefore, that upon payment by the plaintiff to the insurance company of a sum equalling the amount of dividends received by plaintiff, proportioned to the relation of the set-off and entire account of the plaintiff, the notes and mortgage will be cancelled and surrendered to the plaintiff. A decree may be taken accordingly.

*Decree accordingly.*

MATTHEWS and HAMILTON, JJ., concur.

Judges Ross, MATTHEWS and HAMILTON, of the First Appellate District, sitting by designation in the Sixth Appellate District.